1
2    BRIAN R. CHAVEZ-OCHOA
     CALIFORNIA STATE BAR #190289
3    CHAVEZ-OCHOA LAW OFFICES
     4 JEAN STREET, SUITE 4
4    VALLEY SPRINGS, CALIFORNIA 95252
     (209) 772-3013
     FAX (209) 772-3090
5
     THOMAS M. HARVEY
6    BBO#: 225050
     1 CONSTITUTION CENTER
7    FIRST FLOOR
     BOSTON, MASSACHUSETTS 02129
8    (617) 886-0364

9    Attorneys for Plaintiffs

10                     UNITED STATES DISTRICT COURT

11              FOR THE DISTRICT OF MASSACHUSETTS

12                        EASTERN DIVISION

13

14   REV. PATRICK J. MAHONEY, CHRISTIAN )    Case No.: No.
     DEFENSE COALITION, OPERATION         )
15   RESCUE BOSTON and OPERATION          )    MEMORANDUM OF LAW IN SUPPORT
     RESCUE WEST, BRANDI SWINDELL,        )    OF PLAINTIFFS APPLICATION FOR
16   GENERATION LIFE, and SURVIVORS OF    )    TEMPORARY RESTRAINING ORDER
     THE ABORTION HOLOCAUST,              )
17                                        )
                    Plaintiffs,           )
18                                        )    **REQUEST FOR ORAL ARGUMENT**
             vs.                          )
19                                        )
     TOM RIDGE, Secretary of the Department of )  04   11649 NMG
20   Homeland Security, in His Official Capacity, )
     W. RALPH BASHAM, Director of the United )
21   States Secret Service, in His Official Capacity, )
     JOHN DOE AGENT, Field Agent in Charge )
22   of the Boston Office for the United States )
     Secret Service, in His Official Capacity, JOHN )
23   DOE AGENTS 1 to 20, in Their Official )
     Capacity as Special Agents for the United )
24   States Secret Service.                )
                    Defendants.            )
25                                        )
                                          )
26                                        )
                                          )
27

28                  <u>**ISSUES BEFORE THE COURT**</u>

     MEMORANDUM OF LAW - 1

1.    IS IT CONSTITUTIONAL TO LEAVE OPEN GENERALLY A SIDEWALK
TO OTHER USES WHILE CLOSING THAT SAME SIDEWALK TO FIRST AMENDEMENT
ACTIVITY?

2.    CAN NATIONAL SECURITY CONCERNS SUMMARILY SUSPEND FIRST
AMENDMENT RIGHTS?

### FACTS OF THE CASE

This is a civil action pursuant to 42 U.S.C. Section 1983 to vindicate the plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution. The plaintiffs, an ordained Presbyterian Minister, Christian Defense Coalition, an unincorporated religious association, and Operation Rescue Boston, Operation Rescue West, an unincorporated Pro-Life Association, Brandi Swindell, a Bible believing Christian activist, Generation Life, an incorporated Pro-Life Association, and Survivors of the Abortion Holocaust, an unincorporated Pro-Life Association, seek injunctive and declaratory relief, as well as damages, wherein the defendants, their agents, servants, employees, and attorneys, and those acting in active concert with them be denied the authority to leave the sidewalks open generally to other uses while closing the sidewalks to First Amendment Activities for the week of July 26 through August 1, 2004 during the Democratic National Convention.

Plaintiff's Mahoney and Operation Rescue Boston had been granted permits to exercise their First Amendment activities on Louisburg Square and Pinckney Street, the two streets that adjoin Senator John Kerry's home located in Boston, Massachusetts. Senator John Kerry, a senator from Massachusetts, is the presumptive Democratic candidate for President in 2004. Plaintiff's Mahoney and Operation Rescue Boston's permit was summarily cancelled on or about July 23, 2004 by the City of Boston allegedly for reasons of national security. The defendants have ordered the closure of Louisburg Square and Pinckney Street and are forbidding First Amendment activities in this noted area. The defendants have no firm plan to exclude other activities in the closed area such as access to the media, the casual pedestrian, the dog-walker, residents in the closure area, and other vehicular traffic. These noted areas are not being closed

MEMORANDUM OF LAW - 2

CHAVEZ-OCHOA LAW OFFICES
4 JEAN STREET, SUITE 4
VALLEY SPRINGS, CALIFORNIA 95252
(209) 772-3013
FAX (209) 772-3090

pursuant to exigent or emergency circumstances nor for reason of an emerging crisis, but only for reasons promulgated under the umbrella of "national security".

The question the Court must consider is whether the defendants intend to hold hostage or prisoner the residents that live in the closed off area and whether or not the defendants intend to forbid these noted residents from leaving their homes, putting out the trash, going for a casual walk, walking their dogs, and/or any other number of reasons that may bring these residents out of their homes during the time Louisburg Square and Pinckney Street are closed to First Amendment activity. The plaintiffs' contend that to allow residents that live within the closed area to use the sidewalks while at the same time precluding the plaintiffs' from exercising their First Amendment rights on these same sidewalks is unconstitutional.

The plaintiffs', pursuant to their previously granted permit from the City of Boston wherein the plaintiffs were granted access to Louisburg Square and Pinckney Street, offered to send but just one or two women into this noted area, and further consented unnecessarily but voluntarily to a body search, and a search of their possessions, of the one or two persons that would participate in the First Amendment activity. The intended First Amendment activity of the plaintiffs' encompassed the laying of a bouquet of roses at the corner of the home (at the corner of Louisburg Square and Pinckney Street) of the presumptive Democratic Presidential candidate John Kerry (symbolic of the aborted children whose lives have been shamefully taken through and by means of abortion) then offering a prayer for these children (the intended message to Senator John Kerry that this nation needs to protect the unborn) and thereafter leaving the area. The defendants declined the offer of the plaintiffs. The offer of the plaintiffs' to voluntarily consent and subject themselves to a search of their person and their possessions is all the security that the defendants need to assure the safety of Senator Kerry especially in light of the fact that Senator Kerry will not be at home during the plaintiffs' planned First Amendment activity in front of the Senator's home.

Regardless of whether or not the plaintiffs have a permit to exercise First Amendment activity on a public sidewalk and during the week of the Democratic National Convention, the

CHAVEZ-OCHOA LAW OFFICES
4 JEAN STREET, SUITE 4
VALLEY SPRINGS, CALIFORNIA 95252
(209) 772-3013
FAX (209) 772-3090

permitting scheme relevant to First Amendment activity utilized by the City of Boston reads in pertinent part:

From July 10, 2004 through August 1, 2004 the permitting scheme shall be modified as follows:

"(a) Individuals and groups not exceeding twenty (20) people shall not be required to obtain any permits to exercise free speech and/or conduct lawful First Amendment activity. Said demonstrations shall be stationary in nature and shall not include the need for amplification, structures, and/or other equipment. Any individual or group acting under this provision shall abide by all regulations, ordinances, statutes and any and all other laws, including lawful orders of law enforcement officials. Any individual and/or groups in this category shall ensure safe passage (ingress-egress) for all pedestrian traffic on any and all sidewalks and other areas that they may be utilizing. Furthermore, any individual or group of twenty or fewer people without a permit under this provision shall remain clear of and off all roadways, streets, avenues and any and all other arterials utilized by vehicular traffic. If an individual or group wishes to use any roadway, street, avenue or any and all other arterials utilized by vehicular traffic that individual and/or group shall comply with steps one through three noted herein."

The plaintiffs challenge whether or not it is lawful to leave a sidewalk open generally to other uses while closing sidewalks down to First Amendment activities. By manner of the defendants conduct and action complained of herein, the First Amendment rights of the plaintiffs' have been and will continue to be violated and abridged thereby causing irreparable harm and injury to these plaintiffs' and other similarly situated. Finally, plaintiffs contend that whether or not they have a permit or no permit, sidewalks are considered traditional public fora, and as such, the plaintiffs have constitutional rights that allow them to be on Louisburg Square and Pinckney Street for purposes of First Amendment activities.

The plaintiffs further hereby challenge National Security versus First Amendment rights, even in light of September 11, 2001 and the terrorist attacks that took place that day. Plaintiffs' contend that National Security cannot suspend First Amendment rights; there must be a

MEMORANDUM OF LAW - 4

1  balancing between these two issues. If National Security is allowed to suspend First Amendment

2  rights, the future of demonstrations in this nation relevant to all issues, regardless of whether

3  conservative of liberal, shall fall victim to the very goal the terrorists attempted to accomplish on

4  that fateful day on September 11, 2001.

5      First Amendment rights are precious and God given; our founding fathers foresaw the

6  future and put into place protections and safeguards that allowed for and perpetuated robust and

7  solicitous debates concerning the issues facing this country. The defendants cannot be allowed

8  to summarily suspend these plaintiffs' constitutional rights without articulating the nature of the

9  threat and being made to prove that the threat is a real one. It is much too easy to state that one

10  cannot exercise his or her First Amendment rights because of National Security concerns;

11  however, the real question must be at what cost and at what loss of constitutional rights? These

12  plaintiffs' choose not to live their lives in fear; but rather instead hold steadfast to the belief that

13  absent their First Amendment rights and the ability to speak out on issues regardless of what that

14  issue might be, their freedoms that have been foretold and secured through the sacrifice of

15  American blood and American lives will have been for naught.

## ARGUMENT

### PLAINTIFFS SATISFY THE STANDARD FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER

19      The standard for issuance of a temporary restraining order under Fed.R.Civ.P. 65 is well

20  established. It will issue if (1) it clearly appears from specific facts shown by affidavit or by the

21
22  verified complaint that immediate and irreparable injury, loss, or damage will result to the

23  applicant before the adverse party or that party's attorney can be heard in opposition," and (2)

24  the applicants attorney certifies to the efforts made to serve notice on opposing counsel. Id.

25  Plaintiffs satisfy both of these elements.

26      **A.    Plaintiffs will suffer Immediate and Irreparable Injury unless a TRO Issues.**

27      The threat of immediate and irreparable harm to plaintiffs is clear. The plaintiffs are

28  threatened with the prospect of having their constitutional rights abridged and infringed upon by

MEMORANDUM OF LAW - 5

the newly enacted closure or Louisburg Square and Pinckney Street put into place by the defendants for purposes of the Democratic National Convention. This chilling effect on the First Amendment rights of the plaintiffs in this case is undeniably acute. "The loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373 (1976); See also *New York Times Co. v. United States,* 403 U.S. 713 (1971).

Here, the closure of the defendants of Louisburg Square and Pinckney Street prevents, precludes, and denies the plaintiffs access to a sidewalk that is otherwise being generally left open to other uses. This is an unconstitutional practice in that the defendants have indiscriminately ordered the closure of Louisburg Square and Pinckney Street and are forbidding First Amendment activities in this noted area to the plaintiffs and others only, except, and but for, the residents that live within the perimeter of the area encompassed by the closure of Louisburg Square and Pinckney Street. The defendants have no firm plan, however, to exclude other activities in the closed area such as access to the media, the casual pedestrian, the dog-walker, residents in the closure area, and other vehicular traffic. The residents that reside within the perimeter of the area encompassed by the closure of Louisburg Square and Pinckney Street are being allowed into the closure area. The plaintiffs contend that the Court must consider whether the defendants intend to hold hostage or prisoner the residents that live in the closed off area and whether or not the defendants intend to forbid these noted residents from leaving their homes, putting out the trash, going for a casual walk, walking their dogs, talking with neighbors about the Democratic National Convention, and/or any other number of reasons and/or conversations (speech) that may bring these residents out of their homes during the time Louisburg Square and Pinckney Street are closed to First Amendment activity to these plaintiffs. The plaintiffs' contend that to allow residents that live within the closed area to use the sidewalks while at the same time precluding the plaintiffs' from exercising their First Amendment rights on these same sidewalks is unconstitutional.

CHAVEZ-OCHOA LAW OFFICES
4 JEAN STREET, SUITE 4
VALLEY SPRINGS, CALIFORNIA 95252
(209) 772-3013
FAX (209) 772-3090

The at-issue closure of the defendants is an impermissible prior restraint. (See *Shuttlesworth* v. *Birmingham*, 394 U.S. 147, 150-151 (1969); *Staub* v. *City of Baxley*, 355 U.S. 313, 322 (1958); *Kunz* v. *New York*, 340 U.S. 290, 293-294 (1951); *Schneider* v. *State*, 308 U.S. 147, 161-162 (1939); *Lovell* v. *Griffin*, 303 U.S. 444, 451-452 (1938). In these cases, the plaintiffs asked the courts to provide relief where public officials had forbidden the plaintiffs the use of public places to say what they wanted to say. The restraints took a variety of forms, with officials exercising control over different kinds of public places under the authority of particular statutes.

All, however, had this in common: they gave public officials the power to deny use of a forum in advance of actual expression. Such is the case at bar. Invariably, the courts have felt obliged to condemn systems in which the exercise of such authority was not bounded by precise and clear standards. The reasoning has been, simply, that the danger of censorship and of abridgment of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use. The court's distaste for censorship -- reflecting the natural distaste of a free people -- is deep-written in our law.

Furthermore, the decision of the defendants to close Louisburg Square and Pinckney Street fails to satisfy the requirements of time, place, and manner jurisprudence, which "**must not be based on the content of the message**, must be narrowly tailored to serve a significant governmental interest, and **must leave open ample alternatives for communication.**" *Forsyth County* v. *Nationalist Movement*, 505 U.S. 123, 130, 120 L. Ed. 2d 101, 112 S. Ct. 2395 (1992); see also *Clark* v. *Community for Creative Non-Violence*, 468 U.S. 288, 293, 82 L. Ed. 2d 221, 104 S. Ct. 3065 (1984). Here, it is abundantly clear that the residents that live within the closure area will be allowed to carry on their daily activities as more fully described below, however, suffice it to say that the residents will not be precluded from leaving their homes and going outside to their front yards and the sidewalks appurtenant to their homes and having a discussion with their neighbor involving First Amendment speech. How can the defendants control and/or prevent what the residents discuss and where they discuss it? After all, the neighborhood presumably belongs to the residents and any First Amendment activities that they desire to

CHAVEZ-OCHOA LAW OFFICES
4 JEAN STREET, SUITE 4
VALLEY SPRINGS, CALIFORNIA 95252
(209) 772-3013
FAX (209) 772-3090

1  engage in will most certainly be tolerated. How, for example, could the defendants prevent

2  and/or stop a resident from holding a sign with a constitutional message on the sidewalk that

3  abuts that resident's home in the closed off area?

4      Is it illogical to presume that the residents subject to the closure will not continue to live

5  their lives as they otherwise would and have discussions about the Democratic National

6  Convention, about the closure of Louisburg Square and Pinckney Street and the effect on the

7  neighborhood, about their neighbor, Senator John Kerry, and about the state of the nation? How

8  then, plaintiffs' ask, can the defendants preclude some speech (that speech of the plaintiffs) but

9  not the speech of the residents confined within the closure area? The closure amounts to

10  viewpoint and content based discrimination in that the plaintiffs cannot speak about Senator John

11  Kerry within the perimeter of the closure of Louisburg Square and Pinckney Street, but the

12  residents therein can.

13      One of the lead cases on prior restraints is Thomas v. Chi. Park Dist., 534 U.S. 316 (U.S.

14  , 2002). The Chicago Park Dist. matter dealt with a permitting process scheme that did not

15  provide for unfettered and/or unbridled discretion by their public officials as to acceptance or

16  denial of a permit application. While the instant matter does not involve the process of obtaining

17  a permit(s) (the plaintiffs' already had a permit to conduct First Amendment activities at

18  Louisburg Square and Pinckney Street) this case does involve unbridled discretion by public

19  officials and viewpoint and content based discrimination. The Court in Chicago Park Dist.

20  stated:

21      "Of course even content-neutral time, place, and manner restrictions can be applied in

22      such a manner as to stifle free expression. Where the licensing official enjoys unduly

23      broad discretion in determining whether to grant or deny a permit, there is a risk that he

24      will favor or disfavor speech based on its content. The Supreme Court thus requires that a

25      time, place, and manner regulation contain adequate standards to guide the official's

26      decision and render it subject to effective judicial review. Thomas v. Chi. Park Dist., 534

27      U.S. 316 (U.S., 2002).

28

MEMORANDUM OF LAW - 8

1      The instant matter involves viewpoint and content based discrimination for reasons

2 articulated above. Furthermore, while the closure by the defendants of Louisburg Square and

3 Pinckney Street is not pursuant to a regulation or permitting scheme, it is, nevertheless, a

4 decision that places unfettered and unbridled discretion in the hands of the defendants.

5 Furthermore, the closure serves the same purpose as a regulation or permitting scheme whereby

6 a permit is denied, however, here, the plaintiffs' are left with no judicial review but for the filing

7 of the instant matter.

8      "While "prior restraints are not unconstitutional *per se* . . . any system of prior restraint . .

9 comes to this Court bearing a heavy presumption against its constitutional validity."

10 *Southeastern Promotions, Ltd.* v. *Conrad,* 420 U.S. 546, at 558. See, *e. g., Lovell* v. *Griffin,* 303

11 U.S. 444, 451-452 (1938); *Cantwell* v. *Connecticut,* 310 U.S. 296, 306-307 (1940); *Cox* v. *New*

12 *Hampshire,* 312 U.S. 569, 574-575 (1941); *Shuttlesworth* v. *Birmingham,* 394 U.S. 147, at 150-

13 151. Cases addressing prior restraints have identified two evils that will not be tolerated in such

14 schemes. Relevant to this case is the first evil whereby a scheme places "unbridled discretion in

15 the hands of a government official or agency constitutes a prior restraint and may result in

16 censorship." *Lakewood* v. *Plain Dealer Publishing Co.,* 486 U.S. 750, 757 (1988). See *Saia* v.

17 *New York,* 334 U.S. 558 (1948); *Niemotko* v. *Maryland,* 340 U.S. 268 (1951); *Kunz* v. *New York,*

18 340 U.S. 290 (1951); *Staub* v. *City of Baxley,* 355 U.S. 313 (1958); *Freedman* v. *Maryland,* 380

19 U.S. 51 (1965); *Cox* v. *Louisiana,* 379 U.S. 536 (1965); *Shuttlesworth* v. *Birmingham, supra;*

20 *Secretary of State of Maryland* v. *Joseph H. Munson Co.,* 467 U.S. 947 (1984). "'It is settled by a

21 long line of recent decisions of this Court that an ordinance which . . . makes the peaceful

22 enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will

23 of an official -- as by requiring a permit or license which may be granted or withheld in the

24 discretion of such official -- is an unconstitutional censorship or prior restraint upon the

25 enjoyment of those freedoms.'" *Shuttlesworth, supra,* at 151 (quoting *Staub, supra,* at 322).

26 Plaintiffs assert that the instant matter and the decision of the defendants to close Louisburg

27 Square and Pinckney Street is no different from a regulation and/or an ordinance simply because

28

CHAVEZ-OCHOA LAW OFFICES
4 JEAN STREET, SUITE 4
VALLEY SPRINGS, CALIFORNIA 95252
(209) 772-3013
FAX (209) 772-3090

the result is the same; the plaintiffs are precluded from exercising free speech rights in an area traditionally considered public fora.

The chilling effect on plaintiffs' rights under the First Amendment is evidence enough to satisfy the irreparable harm requirement. So also is the chilling effect suffered by third parties not before the Court who would otherwise exercise their First Amendment rights but for the closure of Louisburg Square and Pinckney Street ordered by the defendants. Moreover, the proof of irreparable harm suffered by plaintiffs is clear and convincing. Plaintiffs' point once again to *Elrod v. Burns* and the language previously cited (also see *National People's Action v. Village of Willmette*, 914 F.2d 1008, 1013 (7th Cir. 1990) cert denied, 499 U.S. 921 (1991) (even temporary deprivation of first amendment rights generally sufficient to prove irreparable harm).

### 1.     Plaintiffs' Rights are Protected by the First Amendment

Plaintiffs intend only to peacefully exercise their right to religious speech and religious freedom in a public forum. There is not doubt that such "speech" is protected by the first amendment. *See, e.g. U.S. v. Grace*, 461 U.S. 171, 176 (1983); *Carey v. Brown*, 447 U.S. 455, 460 (1980); *Gregory v. City of Chicago*, 394 U.S. 111, 112 (1969). The deprivation or chill of plaintiffs' federally protected rights, even for minimal periods of time, constitutes irreparable harm. In the instant matter, the defendants' newly enacted closure of Louisburg Square and Pinckney Street prohibits more speech than is necessary and really only prohibits the speech of these complaining plaintiffs but not the residents that live within the closure area. Those individuals (the residents) are left free to express whatever First Amendment speech that they may so desire. The conduct of the defendants is impermissible and therefore subject to sanction.

Informed public discourse and political debate is the foundation to American democracy. A grant of temporary relief will assure that plaintiffs will remain free to exercise their right of

CHAVEZ-OCHOA LAW OFFICES
4 JEAN STREET, SUITE 4
VALLEY SPRINGS, CALIFORNIA 95252
(209) 772-3013
FAX (209) 772-3090

freedom of speech, association and assembly.  No harm will come the result of a temporary

restraining order issuing in this matter so as to determine the above set of facts.

### 2.    Does National Security Concerns outweigh First Amendment Freedoms?

The reason given for closing Louisburg Square and Pinckney Street is for reasons of

national security.  The Court in <u>United States v. Robel, 389 U.S. 258, 264 (U.S., 1967)</u> addressed

the issue of First Amendment rights and National Security and stated the following:

> "Yet, this concept of "national defense" cannot be deemed an end in itself, justifying any
> exercise of legislative power designed to promote such a goal. Implicit in the term
> "national defense" is the notion of defending those values and ideals which set this
> Nation apart. For almost two centuries, our country has taken singular pride in the
> democratic ideals enshrined in its Constitution, and the most cherished of those ideals
> have found expression in the First Amendment. It would indeed be ironic if, in the name
> of national defense, we would sanction the subversion of one of those liberties -- the
> freedom of association -- which makes the defense of the Nation worthwhile."

<u>United States v. Robel, 389 U.S. 258, 264 (U.S., 1967)</u> dealt with a matter wherein the defendant

was employed as a machinist at a defense facility. Appellee was indicted for violating §

5(a)(1)(D) of the Subversive Activities Control Act, <u>50 U.S.C.S. § 784</u>(a)(1)(D), because he was

a member of the Communist Party and was prohibited from working at any defense facility. The

district court dismissed the indictment because it failed to allege that defendant was an active

member of the Communist Party who had the specific intent of furthering the party's goals. The

Court affirmed the judgment, but on the ground that § 5(a)(1)(D) unconstitutionally abridged

defendant's right of association under the First Amendment. To comply with the statute,

defendant was forced to either give up his Communist Party membership to continue

employment or lose his job. If defendant failed to choose, he was subject to criminal penalties.

The statute essentially established guilt by association. It was irrelevant whether defendant was

an active or inactive member because the statute broadly attacked any associational activities.

While the plaintiffs in the instant matter are clearly not communists, the fact remains that

issues regarding National Security and First Amendment freedoms must be independently

MEMORANDUM OF LAW - 11

1   weighed.  While the Court in <u>United States v. Robel, 389 U.S. 258, 264 (U.S., 1967)</u> refused to

2   balance the significance of the two issues, and furthermore, given the fact that the issue before

3   that Court additionally included the legislative powers of Congress, the Court nevertheless

4   stated:

5      It has been suggested that this case should be decided by "balancing" the governmental

6      interests expressed in § 5 (a)(1)(D) against the First Amendment rights asserted by the

7      appellee. This we decline to do. We recognize that both interests are substantial, but we

8      deem it inappropriate for this Court to label one as being more important or more

9      substantial than the other. Our inquiry is more circumscribed. Faced with a clear conflict

10     between a federal statute enacted in the interests of national security and an individual's

11     exercise of his First Amendment rights, we have confined our analysis to whether

12     Congress has adopted a constitutional means in achieving its concededly legitimate

13     legislative goal. In making this determination we have found it necessary to measure the

14     validity of the means adopted by Congress against both the goal it has sought to achieve

15     and the specific prohibitions of the First Amendment. But we have in no way "balanced"

16     those respective interests. We have ruled only that the Constitution requires that the

17     conflict between congressional power and individual rights be accommodated by

18     legislation drawn more narrowly to avoid the conflict. There is, of course, nothing novel

19     in that analysis. Such a course of adjudication was enunciated by Chief Justice Marshall

20     when he declared: "Let the end be legitimate, let it be within the scope of the constitution,

21     and all means which are appropriate, which are plainly adapted to that end, which are not

22     prohibited, but consist with the letter and spirit of the constitution, are constitutional."

23     M'Culloch v. Maryland, 4 Wheat. 316, 421 (1819) (emphasis added). In this case, the

24     means chosen by Congress are contrary to the "letter and spirit" of the First Amendment.

25     <u>United States v. Robel, 389 U.S. 258, 268 (U.S., 1967)</u>.

26  In the instant matter, Congress has not acted nor promulgated any new legislation ordering the

27  suspension of First Amendment rights in favor of National Security.  Here, the defendants have

28  rendered the order that is before this Court.  The plaintiffs argue that the defendants are

MEMORANDUM OF LAW - 12

1    nevertheless bound by the same guidelines that limit congressional power. The plaintiffs

2    contend that if Congress is prohibited by our Constitution from infringing upon First

3    Amendment rights, and in those cases where First Amendment rights are abridged, "the

4    Constitution requires that the conflict between congressional power and individual rights be

5    accommodated by legislation drawn more narrowly to avoid the conflict." The defendants have

6    not narrowly drawn their decision to avoid the conflict that is inherent in this matter.

7          For example, as noted above the defendants are allowing residents into the closed off area

8    of Louisburg Square and Pinckney Street to enter into their homes in the closed off area.

9    Presumably, the defendants will have to allow those residents to go outside and mow and water

10   their lawns, go outside to retrieve the newspaper, to retrieve the mail, and even to walk down the

11   closed sidewalks to attend a dinner party at a neighbor's house three blocks away. And what

12   about the children of these residents? Will they be precluded from playing in the streets and

13   sidewalks and front lawns, from riding their bikes on the sidewalks, and/or playing a sport of

14   their choosing in the closed off area that encompasses Louisburg Square and Pinckney Street?

15   Will friends of these residents be precluded from visiting during the closure period, and if these

16   friends and/or even family members are allowed into the closure area will it be necessary to

17   conduct an investigation into whether or not the friends or other family members pose a risk to

18   National Security? The answer to these questions is almost a certain no. It is for these reasons

19   that plaintiffs question just how narrowly drawn the decision to close Louisburg Square and

20   Pinckney Street is when the totality of the circumstances is taken into account. The First

21   Amendment freedoms of these complaining plaintiffs are being violated and abridged by manner

22   of the defendants conduct and closure noted herein.

23         This being said, the question becomes whether or not the closure of Louisburg Square

24   and Pinckney Street is based upon National Security or for purposes of protecting the one

25   individual, Senator John Kerry. And if it is for the reason of protecting the one individual, the

26   
27   defendants have violated the rights of these plaintiffs in favor of Senator John Kerry. Plaintiffs

28   contend that such discrimination is impermissible.

MEMORANDUM OF LAW - 13

CHAVEZ-OCHOA LAW OFFICES
4 JEAN STREET, SUITE 4
VALLEY SPRINGS, CALIFORNIA 95252
(209) 772-3013
FAX (209) 772-3090

### 3.    The Plaintiffs have Standing to Bring this Action

As to whether or not plaintiffs have standing to bring this action, it is well settled law: "To satisfy the case or controversy requirements of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must, generally speaking, demonstrate that he has suffered "injury in fact" that the injury is "fairly traceable" to the actions of the defendant, and that the injury will likely be addressed by a favorable decision." *Bennett v. Spear,* 520 U.S. 154, 162, 117 S.Ct. 1154, 1161 (1997) (citation omitted). Here, standing is easily established. The plaintiffs intend to exercise their First Amendment rights to free speech, assembly and association at and during the Democratic National Convention. Moreover, the plaintiffs have been precluded from exercising their First Amendment rights in the area of Louisburg Square and Pinckney Street, an area traditionally considered public fora. In this type of case, plaintiffs have standing if they, generally speaking, demonstrate that they have suffered an "injury in fact" that the injury is "fairly traceable" to the actions of the defendant, and that the injury will likely be addressed by a favorable decision. The plaintiffs constitutional rights have been adversely impacted and violated by the defendants' newly enacted closure for reasons noted above. The plaintiffs' injury can and will be remedied by a favorable decision of this Court.

### B.    Plaintiffs' Counsel has Provided Oral Notice of the Application for
### Temporary Restraining Order.

The second prong of the temporary restraining order analysis is a showing of counsel's efforts to serve notice of the application on opposing counsel. See Fed.R.Civ.P. 65(b). This element is easily satisfied here. On July 23, 2004, I placed a telephone call to the United States Secret Service at their Boston office. I informed the person who answered the telephone of the

MEMORANDUM OF LAW - 14

plaintiffs' intent to file this complaint, including the injunctive relief sought herein. Shortly

thereafter, I received a return telephone call from Ms. Jennifer Boal from the United States

Attorney's Office. I informed her of the plaintiffs' intention to file this matter, including the

injunctive relief sought herein, on Monday, July 26, 2004 at 10:00 a.m. in the United States

District Court for the District of Massachusetts. Thereafter, I had a subsequent conversation with

Mr. George Henderson, also of the United States Attorney's Office, wherein we discussed the

possibility of a resolution. Mr. Henderson telephoned me after our conversation about the

possible resolution, and informed me that the defendants had rejected the offer of the plaintiffs.

Mr. Henderson inquired as to whether or not the plaintiffs' still intended to file this complaint

and I indicated to him that the plaintiffs would on Monday, July 26, 2004 at 10:00 o'clock., in

the United States District Court for the District of Massachusetts in Boston, Massachusetts.

### CONCLUSION

For the foregoing reasons, plaintiffs' respectfully ask this Court to grant the sought after

relief noted herein.

Dated: July 23, 2004.

Respectfully submitted,

CHAVEZ-OCHOA LAW OFFICES


Brian R. Chavez-Ochoa
California State Bar #190289
Lead Counsel for the Plaintiffs
4 Jean Street, Suite 4
Valley Springs, California 95252

MEMORANDUM OF LAW - 15

1

2

(209) 772-3013
Fax (209) 772-3090

3

4

5

_Thomas M. Harvey_

6

Thomas M. Harvey
BBO #: 225050

7

1 Constitution Center, First Floor
Boston, Massachusetts 02129

8

(617) 886-0364

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF LAW - 16